¶ 1.
Skoglund, J.
Defendant appeals from the trial court’s determination that he violated the terms of his probation by failing to complete a domestic-violence program in a timely manner and by engaging in threatening behavior during an intake meeting for the program. Defendant challenges both of these conclusions on appeal. We affirm.
¶ 2. On June 20, 2012, defendant pled guilty to one count of second-degree aggravated domestic assault, one count of resisting arrest, and one count of violating his conditions of release. Defendant received an agreed sentence of nine months to three years, all suspended, and he was placed on probation. Defendant’s probation conditions required him, among other things, to complete the Domestic Violence (DV) Solutions program and to refrain from violent or threatening behavior. The term of probation was fixed at one year and expired by its original terms on June 20, 2013. The instant violation-of-probation (VOP) complaint was filed in February 2013.
¶ 3. The following evidence was presented at the April 2013 merits hearing. Spectrum Youth and Family Services runs the DV Solutions program. Defendant cancelled two scheduled intake meetings for the program in January 2013, asserting that he lacked the $20 fee. Defendant’s probation officer scheduled a third intake meeting and told defendant that if he did not go through with the scheduled meeting, he would be cited for violating probation.
¶4. The intake meeting occurred on February 13, 2013, eight months into defendant’s year-long probation. The meeting went badly. The counselor testified that defendant was angry and belligerent from the outset, with defendant uttering a hostile response when she simply called his name for his appointment. When the counselor asked about defendant’s convictions, he accused her of going through his records. He questioned why he had to pay for the meeting. He denied committing the offenses for which he was convicted. Given his denial, the counselor informed *570 defendant that she would need to stop the intake. She stood up, as did defendant. Defendant then “puffed out” his chest and stood between the counselor and the door. The counselor called out to a probation officer for assistance. Defendant remained standing in the doorway. When the probation officer arrived to escort defendant, defendant began yelling at him.
¶ 5. The counselor testified that she felt threatened by defendant’s behavior. She stated that in eight years of conducting intakes, she had never before felt so threatened that she had to call a probation officer for help. Defendant denied threatening the counselor but admitted in court that his behavior was “not very civil” and that he “wasn’t very nice that day.”
¶ 6. At the conclusion of the hearing, the trial court found that defendant violated both probation conditions at issue. As it explained, defendant had been found guilty of second-degree aggravated domestic assault and he had gone more than six months without addressing the DY Solutions condition of his probation. The court rejected defendant’s assertion that he had been unable to pay the $20 program fee. As to the third intake meeting, the court found that defendant’s actions alone — both denying that he committed the underlying offense and his threatening behavior — prevented him from completing the intake that day.
¶ 7. The court emphasized that defendant’s behavior that day had to be taken in context. It found that defendant knew why he was at Spectrum, and indeed, by his own admission, he had been to Spectrum before for that very same purpose. The court found that defendant had the same attitude from the time he entered the building until he left. He was angry and belligerent, and he carried himself in a threatening manner to the point where the counselor, for the first time in eight years, had to summon another officer. Even after the counselor called for assistance, defendant did not leave the room. He remained standing in the room in an assertive posture and tried to intimidate the counselor by standing between her and the only exit. The court concluded that the combination of defendant’s words and demeanor — his tone of voice, the way he carried himself, the way he expressed himself, his denial of why he was there, and arguing over the charge that he was there for — rose to the level of threatening behavior.
*571 ¶ 8. At the sentencing hearing, defendant’s probation officer advocated that probation be revoked and that the court impose the underlying sentence with a recommendation that defendant complete the Discovery Program for violent offenders while in prison. Through counsel, defendant sought to remain on probation and requested additional time to complete the DV Solutions program. His attorney stated:
So we would be asking for the court to impose — to reimpose the original conditions of probation with an extension of the term to allow for him to complete DV Solutions. Clearly if he’s not able to do it, he would be back here on a violation of probation, and I think at that point the department’s request for revocation would be on more solid footing than it is at this point.
Defendant said the same thing:
I would just ask the court to grant me my request to continue [on probation] and to prove to the court and to Probation and Parole that I am willing to follow through and accomplish these recommendations and these court orders of these classes and willing to participate, not just show up.
¶ 9. The trial court accepted defendant’s position. It extended the term of probation by another year to June 2014. With respect to the violation based on threatening behavior, the court ordered defendant to write a letter of apology to the intake counselor at Spectrum. Defendant appealed from the court’s order.
¶ 10. In August 2013, while his appeal was pending, defendant’s probation officer filed a second VOP complaint based on defendant’s consumption of alcohol as well as his dismissal from the DV Solutions program for failure to attend three program meetings in May 2013 and one in July 2013. The probation officer filed a third VOP complaint in September 2013 alleging that defendant again violated the no-alcohol condition and engaged in violent or threatening behavior on three separate occasions.
¶ 11. Pursuant to a plea agreement, defendant admitted to the August alcohol violation.[2] The court subsequently revoked defend *572 ant’s probation and imposed the underlying sentence. Defendant did not appeal from this order.
¶ 12. We apply well-established principles to this dispute. The State must demonstrate by a preponderance of the evidence that a defendant violated a condition of probation. 28 V.S.A. § 802(a)(4). If a violation is established, the court may continue probation, alter the conditions of probation, or revoke probation and impose the underlying sentence. Id. § 304. Whether a violation occurred is a mixed question of law and fact requiring the trial court to determine what actions the defendant took and whether those actions violated the probation conditions. State v. Austin, 165 Vt. 389, 398, 685 A.2d 1076, 1082 (1996). “We will not disturb the court’s findings if they are fairly and reasonably supported by credible evidence, and we will uphold the court’s legal conclusions if reasonably supported by the findings.” State v. Decoteau, 2007 VT 94, ¶ 8, 182 Vt. 433, 940 A.2d 661.
¶ 13. Defendant first argues that the court erred by finding that he was required to complete the DV Solutions program by February 2013, eight months into his probation. He maintains that he had until the end of his probationary term to comply with this requirement, and that the State failed to show that he could not have completed the program by this time. Defendant acknowledges that he did not raise these arguments below. He contends, however, that the trial court committed plain error because the errors were “obvious” and the court’s decision violated his due process rights.
¶ 14. We have recognized that plain-error review of unpreserved issues in the probation-revocation context is sometimes appropriate, depending on the nature of the claims. See Decoteau, 2007 VT 94, ¶ 11 (recognizing that plain error may be found in civil proceedings when “important interests and basic constitutional rights” are implicated, and concluding that plain-error review was warranted where claim involved defendant’s right to confront adverse witnesses and thus implicated validity of entire proceeding (quotation omitted)); State v. Gilbert, 2009 VT 7, *573 ¶ 7, 185 Vt. 602, 969 A.2d 125 (mem.) (citing Decoteau, and concluding that probationer was entitled “at best” to plain-error review, and finding no “obvious” error where legal question advanced by probationer — whether verbal threats can constitute “threatening behavior” — had not yet been decided by this Court). To be entitled to reversal on plain-error grounds, the error must be “obvious,” and defendant must show that “the error strikes at the heart of [his] constitutional rights or results in a miscarriage of justice.” State v. Ayers, 148 Vt. 421, 426, 535 A.2d 330, 333 (1987). We have held that errors in unsettled areas of law ' are not obvious, and therefore not plain. See Gilbert, 2009 VT 7, ¶ 7 (citing State v. Butson, 2008 VT 134, ¶¶ 15-18, 185 Vt. 189, 969 A.2d 89).
¶ 15. We find no plain error here. It is the State’s burden to show that defendant had fair notice of the condition he allegedly violated. State v. Bostwick, 2014 VT 97, ¶ 8, 197 Vt. 345, 103 A.3d 476. The condition may be “express” or “so clearly implied that a probationer, in fairness, can be said to have notice of it.” Austin, 165 Vt. at 398, 685 A.2d at 1082. In this case, defendant was specifically informed by his probation officer that he must complete the third scheduled intake for DV Solutions or he would be cited for violating probation. See State n Gleason, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) (explaining that due process requires notice of what acts constitute a violation and instructions from a probation officer can serve to provide notice); see also Lawson v. State, 969 So. 2d 222, 235 (Fla. 2007) (even though probation order contained no express time parameters for completion of drug-treatment program, commonsense reading of order provided probationer adequate notice that treatment program should be undertaken at beginning of probationary period).
¶ 16. It is undisputed that defendant failed to complete the third intake, and, as the trial court found, it was defendant’s own actions that prevented him from completing the intake that day. Under these circumstances, the court did not commit plain error in finding that defendant violated the DV Solutions' condition of his probation. We note, moreover, that at sentencing, defendant agreed that he had not completed the DV Solutions program and requested that his term of probation be continued so that he could complete programming. The trial court accepted his request and continued the term of probation for another year.
*574 ¶ 17. Given our conclusion, we do not reach the issue of whether the evidence is sufficient to support a violation of the condition proscribing threatening behavior. The requirement that defendant write a note of apology was not challenged on appeal. As defendant and his attorney both stated to the trial court, the delay in completing the program was a sufficient reason for extending the term of probation.

Affirmed.

¶ 18.

 As the State notes, the violation of the DV Solutions condition was not specifically addressed during this hearing, and it is unclear from the record why this omission *572 occurred. With respect to the allegations concerning violent or threatening behavior, defendant did not admit to these violations because he had pending criminal charges for this behavior. Court records indicate that in late 2014, defendant pled guilty to simple assault on a police officer, and he was sentenced to serve 119-to-120 days in jail, beginning on October 29, 2014, to be served concurrently with his existing sentence.